UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMEEL TALLEY,** | ) | Case No. 1:06 CV 1393 |
| | ) | |
| Petitioner, | ) | Judge John R. Adams |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **HARRY HAGEMAN, DIRECTOR** | ) | |
| **ADULT PAROLE AUTHORITY,** | ) | |
| **STATE OF OHIO,** | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Jameel Talley seeks to overturn his July 2003 state conviction of involuntary manslaughter for which he received a three-year sentence plus five years post-release control. Talley has exhausted his state remedies and sought *certiorari* to the United States Supreme Court on the grounds he now presents within his counseled application for federal habeas corpus review under 28 U.S.C. §2254. See *State v. Talley*, 2004 WL 1234291, 2004 - Ohio - 2486 (Ohio App. 8 Dist.), appeal not allowed, 103 Ohio St.3d 1494, 816 N.E.2d 1080, 2004 - Ohio - 4605 (Table), *cert. denied*, 545 U.S. 1101 (2005).

The uncontested facts in a nutshell are that Talley had been a Maple Heights, Ohio jail correctional officer who was moonlighting as a security guard at Dillard's Department Store at Randall Park Mall. He apprehended Guy Wills for shoplifting and during the scuffle, Wills suffered traumatic injuries including a fractured skull and brain hemorrhage and later died. Talley was indicted for felony murder and involuntary manslaughter. The jury at his trial was instructed on the

indicted offenses of felony murder and involuntary manslaughter and additionally charged with the lesser included offense of reckless homicide. Talley was convicted of involuntary manslaughter under Ohio Rev. Code §2903.04(A) (a first degree felony) for causing the death of another as a proximate result of the offender's committing or attempting to commit a felony, in this case, "felonious assault."

In his counseled application under 28 U.S.C. §2254 for federal habeas corpus review, Talley seeks a new trial on his first ground of the trial court's refusal to instruct the jury on what Talley argues were lesser included offenses of involuntary manslaughter under Ohio Rev. Code §2903.04(B) (a third degree felony) and negligent homicide under Ohio Rev. Code §2903.05 (a first degree misdemeanor). Talley's second ground seeks retrial due to prosecutorial misconduct for the prosecutor's exhortation to the jury to send a message in its verdict exemplifying community conscience.

*Failure to Instruct on Alleged Lesser Included Offenses:*

> GROUND ONE: The failure to instruct the jury on the lesser-included third degree felony offense of involuntary manslaughter via a death resulting from a misdemeanor assault violated state and federal due process and the state and federal constitutional rights to trial by jury and the presumption of innocence. Ohio Const. Art. I, Sec. 10; U.S. Const. Amends. V, VI and XIV; *Ferrazza v. Mintzes*, 735 F.2d 967, 978 (6th Cir. 1984); *Bagby v. Sowders*, 894 F.2d 792 (6th Cir.) (*en banc*), *cert. denied*, 496 U.S. 929 (of the fifteen judges participating *en banc*, four opined that due process requires that lesser included offenses must always be given when supported by the evidence, five opined that due process is only violated when the failure to

1:06 CV 1393                                                      3

> instruct results in a fundamental miscarriage of justice, five declined to reach the issue, and only one judge held that due process did not require the giving of lesser included offenses instructions in non-capital cases.

Talley requested that the trial court instruct the jury on involuntary manslaughter due to simple assault, a predicate misdemeanor offense under Ohio Rev. Code §2903.04(B).[1] The fundamental difference between the two involuntary manslaughter offenses is that for Talley's convicted offense under subpart A, the predicate act is a felony, in contrast to subpart B where the predicate act is a misdemeanor. See *State v. Mason*, 2003 WL 22532865 at *6, 2003 - Ohio - 5974 (Ohio App. Dist.), affirmed, 105 Ohio St.3d 126, 823 N.E.2d 443, 2005 - Ohio - 791 (2005). Talley relies on *State v. Thrasher*, 1994 WL 12425 (Ohio App. 2 Dist.), for the proposition that assault is always a lesser included offense of "felonious assault" and so the court must instruct on assault even when not requested if the jury could reasonably find the defendant guilty of only "assault." According to Talley, this required the state court to charge the jury on the companion lesser degree of involuntary manslaughter.

---

[1] The Ohio Rev. Code provides under §2903.04:

(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.

(B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

1:06 CV 1393                                                        4

Respondent argues that this claim must be dismissed because it involves a matter of state law or ultimately Talley's federal claim lacks merit. Respondent begins with a tangential issue based on *Cupp v. Naughton*, 414 U.S. 141 (1971), concerning the adequacy of the jury instructions and then returns to the issue presented by quoting a report of the undersigned from another case. Talley on the other hand puts no effort into supporting his federal claim. He parrots his arguments from state court in hopeful expectation of a different outcome.

Both parties neglect to notice, though, that there is no reasoned state court decision on Talley's federal claims presented in his first ground. In habeas corpus review generally the district court is required to look to the last reasoned state court decision and evaluate its reasoning under 28 U.S.C. §2254(d)(1) and (2). See *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991) (for purposes of federal habeas corpus review there is a presumption that later unexplained orders from the State Supreme Court rest on the same grounds as the prior reasons the judgment rejecting the federal claim); *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002)(explaining restrictions of Congressional review). Although Talley's federal constitutional arguments were raised to the state courts, the state appellate court, which issued the last reasoned decision, rested exclusively on state grounds and failed to address the federal claim. See *Talley*, 2004 WL 1234291 at ¶¶ 56-70. Under such circumstances the district court has no state court decision on the federal constitutional issue before it and must resolve the issue *de novo*. See *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006);

1:06 CV 1393                                             5

*Moldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

The law of Ohio permits a jury to find the defendant guilty of "other offenses . . . included within the offense charged" or "an inferior degree thereof" "[w]hen the indictment if information charges an offense, including different degrees." See Ohio Rev. Code §2945.74; Ohio Crim. R.31(C); *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988); *State v. Kidder*, 32 Ohio St.3d 279, 513 N.E.2d 311 (1987) (modified in *Deem*); *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), *cert. denied*, 493 U.S. 826 (1989). The U.S. Supreme Court has found that the U.S. Constitution bars a statutorily imposed "artificial barrier" which restricts a state court from instructing on a noncapital lesser included offense, as interpreted under state law, when the defendant is charged with a capital offense. *Hopkins v. Reeves*, 524 U.S. 88, 96, 118 S.Ct. 1895, 1900, 141 L.Ed.2d 76 (1998). In short where a noncapital lesser included offense instruction exists under long-standing interpretation of state law, the state court must be permitted to provide such instruction so the jury has a third option between conviction of a capital offense or acquittal. *Id*; and see *California v. Ramos*, 463 U.S. 992, 1007, 103 S.Ct. 3446, 3456-57, 77 L.Ed.2d 1171 (1983); *Beck v. Alabama*, 447 U.S. 625, 628-29, 100 S.Ct. 2382, 2384-85, 65 L.Ed.2d 392 (1980). As the Sixth Circuit pointed out in *Campbell v. Coyle*, the decision in *Beck* expanded the federal entitlement to "an instruction on a lesser included offense if the evidence would permit a jury

1:06 CV 1393                                            6

rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Campbell v. Coyle*, 260 F.3d 531, 540 (6th Cir. 2001); *Beck*, 447 U.S. at 635. This federal rule is equivalent to Ohio's rule that "[t]here must be 'sufficient evidence' to 'allow the jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" *State v. Conway*, 108 Ohio St.3d 214, 239, 842 N.E.2d 996, 1027, 2006 - Ohio - 791 (2006), *cert. denied*, 127 S.Ct. 122 (2006)(quoting *State v. Shane*, 63 Ohio St.3d 630, 632-33, 590 N.E.2d 272, 275 (1992)); *State v. Kilby*, 50 Ohio St.2d 21, 24-25, 361 N.E.2d 1336, 40 O.O.3d 80 (1977); and see *Beck v. Alabama*, 447 U.S. at 636 n. 12, 100 S.Ct. at 2389 n. 12 ("Although the states vary in their description of the quantum of proof necessary to give rise to a lesser included offense instruction they agree that it must be given when supported by the evidence.") (citing *Kilby inter alia*). *Campbell*, like *Beck*, though, involved a defendant facing the death penalty. Federal due process extends only to provide a right in **capital** cases for the jury to consider a noncapital lesser-included offense under state law "when 'the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction.'" *Bowling v. Parker*, 344 F.3d 487, 499 (6th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004)(quoting *Beck v. Alabama*, 447 U.S. 625, 638, 100 S.Ct. 23382, 65 L.Ed.2d 392 (1980)).

Talley, though, was not facing a potential death penalty in his felony murder trial (See Indictment, Resp. Ex. 1). Consequently, weighing heavily against his argument on federal review, is that the Sixth Circuit has held generally in **noncapital** cases, such as this, the failure to instruct on a lesser included offense is not "such a fundamental defect as inherently results in a miscarriage

1:06 CV 1393 7

of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*), *cert. denied*, 496 U.S. 929 (1990); *Campbell v. Coyle*, 260 F.3d at 541; *Scott v. Elo*, 302 F.2d 598, 606 (6th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003); compare *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Hopkins v. Reeves*, 524 U.S. 88, 97, 118 S.Ct. 1895, 1900, 141 L.Ed.2d 76 (1998) ( lesser included offense instructions are required in capital cases).

The lead decision in *Bagby* did postulate that it was "conceivable" that a "fundamental miscarriage of justice" may result "from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Bagby*, 894 F.2d at 795. That statement, though, was made in context of the proposition that, "we should not intervene unless failure to give the instructions amounts to a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person (citation omitted)." *Bagby*, 894 F.2d at 795. Talley does not argue that he is wrongly convicted due to innocence, but instead he argues that he was wrongly convicted of a crime carrying a penalty greater than one of the alternate lesser included offenses for which he requested jury instruction. Both *Bagby* and *Bowling, however,* leave open the possibility to grant the writ due to state law trial errors that had deprived the habeas applicant of fundamental fairness in the trial process. See *Bowling*, 344 F.3d at 502 n.4 (citing *Hutchinson v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Bagby*, 894 F.2d at 797. As the language from lead opinion in *Bagby* indicates in noncapital trials the "failure to instruct on lesser included

1:06 CV 1393                                                                 8

offenses" may create "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Id.*, at 797.

The jury at Talley's trial was instructed on felony murder under Ohio Rev. Code §2903.02(B), involuntary manslaughter under Ohio Rev. Code §2903.04(A), and reckless homicide under Ohio Rev. Code §2903.041. Felony murder prohibits "cause[ing] the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and it is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code." Ohio Rev. Code §2903.02(B) (2003) (and is currently in force). As explained by the state court decision, the predicate felony was felonious assault under Ohio Rev. Code §2903.11(A)(1), a second degree felony. See *Talley*, 2004 WL 1234291 at ¶¶ 66, 89; Ohio Rev. Code §2903.11(D). This predicate offense, felonious assault, prohibits "knowingly" . . . "cause[ing] serious physical harm to another." There is no question that felonious assault is a proper predicate for felony murder. See *State v. Miller*, 96 Ohio St.3d 384, 389-90, 775 N.E.2d 498, 2002 - Ohio - 4931 (2002). Further, there is no disagreement that involuntary manslaughter is a lesser included offense of felony murder under the three-prong test from *State v. Deem*.[2] See *Talley*, at ¶¶ 62-63.[3]

---

[2] The three-part test set forth in *Deem* provides:
    An offense may be a lesser included offense of another if (I) the offense carries a lesser penalty than the other if; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. *Deem*, 40 Ohio St.3d at 205, 533 N.E.2d at 294.

[3] What confuses the issue is that in Talley's situation felony murder and "felony involuntary manslaughter" are factual equivalents. As explained in *State v. Miller*, when felonious assault is the predicate felony offense for felony murder, felonious assault supplies the *mens rea* element of "knowingly." *Id.* 96 Ohio St.3d at 390. The predicate of

1:06 CV 1393                                             9

Talley sweeps aside the fact that the state trial court instructed on two lesser included offenses of felony murder - "felony" involuntary manslaughter and reckless homicide. The focal point of legal analysis of fundamental fairness does not begin with the lesser included offense of involuntary manslaughter. Talley's arguments implicitly assume that analysis of his ground should commence with this "inferior offense" as charged in the indictment and that Talley was charged with the greater offense of felony murder should be ignored. It makes no difference under Ohio Crim. R. 31(C) and Ohio Rev. Code §2945.74, however, whether the lesser included offense was included in the indictment as an "inferior offense," and charged accordingly, or charged as a "lesser included offense" at the request of the prosecution or defense. In effect, Talley is seeking to establish that the failure to instruct on an *additional* lesser included offense is "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d at 797. This position is legally untenable.

---

felonious assault satisfies felony murder's elements of an offense of violence that in this case was a felony of the second degree. However, the state rule is that, [e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge of a such lesser included offense is required only when the evidence presented at trial would necessarily support both an acquittal on the crime charged and conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988) (syllabus ¶2). When the facts established the *mens rea* of "knowingly" causing the death of another due to felonious assault, there was no basis to acquit Talley of the greater offense to convict on the lesser. It is for this reason that the defendant in *State v. Brundage* when charged with felony murder premised on felonious assault was not entitled to an instruction for felony involuntary manslaughter as a lesser included offense. *Id.*, 2004 WL 2757605 at ¶12, 2004 - Ohio - 6436 (Ohio App. 1 Dist.).
    This was not error in this case, though. While a charge on "felony involuntary manslaughter" may have been unwarranted under *State v. Thomas*, such a charge was required here because both offenses of felony murder and involuntary manslaughter were indicted, thus assuring that the jury would be instructed on the crime carrying a lesser penalty. Ohio recognizes both lesser included offenses and offenses of an inferior degree. See Ohio Crim. R. 31(C); Ohio Rev. code §2945.74. An indictment, information or complaint may charge the offense and its "inferior degrees." As a result of this exercise of prosecutorial discretion, the jury was able to show leniency to permit a lesser punishment for the act of felonious assault resulting in death.

1:06 CV 1393                                             10

Talley in reality is not complaining about the denial of an alternate charge to the jury. His claim is that there were four alternate lesser included offenses for felony murder ( two forms of involuntary manslaughter which for the sake of convenience are referred to as "felony involuntary manslaughter," and "misdemeanor involuntary manslaughter," plus reckless homicide and negligent homicide) but the trial court approved of only two, by overruling Talley's request for instructions on the lesser degree of involuntary manslaughter and negligent homicide. The undersigned is unaware of any authority that as a matter of federal due process a petitioner who has been convicted of one lesser included offense, or offense of an inferior degree, may complain that the jury was not charged with another lesser included offense. None of the views in *Bagby*, even among the dissenters, support Talley's contention. The dissent in *Bagby* believed that the trial court should not have denied the requested lesser included offense instruction. *Id.*, 894 F.2d at 800-01. Talley, in contrast, did receive two lesser included offense instructions-one by virtue of its inclusion in the indictment as explained in note 3. It is difficult to see how a jury instructed on two lesser included offenses can exemplify a denial of federal due process due to rejection of two alternate instructions.

Talley carries the burden to establish that he suffered "from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Bagby*, 894 F.2d at 795. The prosecution's case was built primarily upon the testimony of two eyewitnesses who testified that Talley picked Wills up and "slammed" him to the floor, the extent of Wills' injuries, and that Wills' injuries according to expert forensic testimony were consistent with being dropped on his head as described by the eyewitnesses *Talley,* at ¶¶30-32, 33, 41. The state court decision noted Talley's

defense including his report to the store manager indicating that he had struggled with Wills, lost his balance, and both men fell." *Talley* at ¶13-14. While Talley himself did not testify at trial, he did present the testimony of a Cleveland police officer that the injuries were consistent with a struggle as Talley had described it. It is conceivable under state law that actions causing another to slip and fall and sustain injury may constitute an "assault." See *State v. Johnston*, 1990 WL 197941 (Ohio App. 7 Dist.). Misdemeanor degrees of assault under Ohio Rev. Code §2903.13 consist of either "knowingly cause[ing] physical harm to another" (see Ohio Rev. Code §2903.13(A)) or "recklessly cause[ing] serious physical harm to another." (See Ohio Rev. Code §2903.13(B)).[4]

The conviction on involuntary manslaughter, one of the lesser included offenses of felony murder, was supported by the evidence viewed in the light most favorable to the prosecution. Fundamental fairness, "[i]n the context of requested jury instructions," requires "assur[ance of] the accuracy of the state court determinations of the offenses fairly encompassed withing the purview of the evidence adduced at trial." *Bagby*, 894 F.2d at 794. Under other circumstances there might be an issue concerning the sufficiency of the evidence, the first point brought up in *Bagby*. See, *id.*, 894 F2d at 794 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct 2781, 61 L.Ed.2d 560 (1979)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."

---

[4] The difference between knowingly and recklessly can be best summarized by the fact that knowledge refers to "awareness of probability whereas recklessness is based on likelihood." See *State v. Peck*,110 Ohio App.3d 632, 636, 674 N.E.2d 1263, 1265 (1996). Thus quoting from the legislative service comment, "[b]asing the definition of knowledge on probability and the definition of recklessness unlikelihood is intentional. Something is 'probable' when there is more reason for expectation or belief than not, whereas something that is 'likely' when there is merely good reason for expectation or belief." See Ohio Rev. Code §2901.22, Legislative Service Commission comment.

1:06 CV 1393                                                      12

*Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). A decision to convict is rational when guilt is established on review of all of the evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. Talley does not contend that his involuntary manslaughter conviction is not in accord with *Jackson*. He contends that the jury could have made alternate findings had the jury been permitted to consider the other two alternate lesser included offense instructions. He relies on the state rule on the quantum of proof necessary to require instruction of a lesser included offense.

Had this been a capital matter, the undersigned would be more receptive to Talley's argument. However, *Bagby* appears to indicate reliance on the *Jackson* standard when resolving the issue of fundamental fairness in **noncapital** cases, and *not* whether a jury could rationally find a defendant guilty of the lesser offense and acquit him of the greater. *Id.*, 894 F.2d at 794; compare *Campbell v. Coyle*, 260 F.3d at 540. There clearly was no denial of fundamental fairness when the evidence is viewed in a light most favorable to the prosecution.

The state trial court's ruling permitting instruction on "reckless" homicide as a lesser included offense is certainly difficult to reconcile with the state appellate court's decision that the evidence indicated only "knowing" conduct by Talley. *Talley,* at ¶66. Even so, when viewed in the light favorable to defendant under Ohio's standard, a jury could not "reasonably" reject the greater offense of "felony involuntary manslaughter" (and it did not since it rejected conviction on the offense of reckless homicide). As the facts related in the state court decision indicated, the assault

1:06 CV 1393                                              13

was "felonious" due to Talley's knowledge and training as a corrections officer, the appalling extent of injury sustained by Wills, expert medical opinion that the injuries were consistent with the events described by the two eyewitnesses, Talley's much greater physical size, and Talley's prior exculpatory remark that Wills had injured himself falling out of a chair at the security office. *Talley*, at ¶¶ 4, 30-32, 37, 66. One eyewitness testified that she saw Talley grab Wills behind the leg and by the shoulder and dump him on his head (*Talley* ¶24) and the other eyewitness testified that Talley "picked the man up and slammed him to the floor, causing him to strike the left side of his head and his shoulder." *(Talley*, at ¶33.) "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Ohio Rev. Code §2901.22(B). Under either the state quantum of proof for lesser included offenses, or its federal equivalent for capital cases, *de novo* review establishes instruction for involuntary manslaughter based on mere assault was unwarranted. and certainly there was no, " fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby*, 894 F.2d at 797.

Talley further persists in his argument that the jury should have been given the opportunity to consider the offense of "negligent homicide" as described under Ohio Rev. Code §2903.05. However as correctly explained in the state court decision negligent homicide is not a lesser included offense of murder. Negligent homicide prohibits, "negligently cause[ing] the death of another . . . by means of a deadly weapon or dangerous ordinance as defined in §2923.11 of the Revised Code."

As explained by the Ohio Supreme Court in *State v. Koss*, the second prong of the lesser included offense test from *State v. Deem* is not met "because one can purposely cause the death of another by means other than by a deadly weapon or dangerous ordnance. Therefore, because negligent homicide is not always and "necessarily included in" murder, we hold that negligent homicide is not a lesser included offense of murder." *State v. Koss,* 49 Ohio St.3d 213, 219, 551 N.E.2d 970, 975 (1990). Accordingly, negligent homicide is not a lesser included offense of felony murder so there is no error in the application of state law on this issue or for Talley to extrapolate to a federal due process argument. Talley has not established that he suffered "from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Bagby*, 894 F.2d at 795.

*Prosecutorial Misconduct:*

> GROUND TWO:    The prosecution's closing argument unfairly deprived Officer Talley of a fair trial, in violation of the Fourteenth Amendment. Confronted with a close case, the prosecution proceeded to make a number of improper comments which, either individually or collectively, denied Mr. Talley due process of law.

"The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is 'whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Durr v. Mitchell*, 487 F.3d 423, 439 (6th Cir. 2007)( quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974). This standard requires the petitioner to show that the prosecutor's comments "so infected the trial with unfairness as to

make the resulting conviction a denial of due process." *Id.*; and see *Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct.2004, 129 L.Ed.2d 1 (1994); *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).The judicial determination is to be made "in the context of the facts and circumstances of the case...." *Darden*, 477 U.S. at 183 n. 15. If conduct is found to be improper, four factors are then considered to determine flagrancy: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.) *cert. denied*, 546 U.S. 865 (2005); *Durr*, 487 F.3d at 439; *Bowling v. Parker*, 344 F.3d at 512-13.

The claim of prosecutorial misconduct was directly addressed in the state appellate court's decision as Talley's third assignment of error (*Talley,* at ¶¶75- 78). With regard to the first remark of "[would] you want[maybe somebody from your family] raised from the floor and thrown . . ." (Tr. 1778)." The state decision noted there was no objection and found the remark did not constitute plain error. *Talley,* at ¶76. Ohio's contemporaneous objection rule is an adequate and independent state rule and a defendant who fails to object waives review of the issue both in state review and federal habeas corpus review absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 207); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 967-68 (6th Cir. 2004); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000).[5]  Subsequent plain error review by Ohio state courts does not

---

[5] When respondent argues that a ground has been defaulted due to a state procedural rule, a four-part analysis must be performed in order to determine the validity of the state procedural rule that constituted the basis for the alleged

1:06 CV 1393                                                        16

waive this procedural default. See *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Keith*, 455 F.3d at 673; *Williams*, 380 F.3d at 968-69; *Seymour v. Walker*, 224 F.3d 542, 547 (6th Cir. 2000). Further, the subsequent unexplained denial of appeal by the Ohio Supreme Court is presumed to rest on the continuation of this procedural default when the state supreme court decision is unexplained. See *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (plain error); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (plain error). This presumption carries through notwithstanding the Ohio Supreme Court's dismissal on the basis of no substantial constitutional question. See *Levine v. Torvik*, 986 F2d. 1506, 1517 n. 8 (6th Cir. 1993) *cert. denied*, 509 U.S. 907 (1993), abrogated on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Hinkle*, 271 F.3d at 244; and see *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Talley has not attempted to establish "cause" to excuse his procedural default.

With regard to the second remark that the jury represented the community, the court found that "appeals to the jury to act as the community conscience are not *per se* impermissible," and that the prosecutor's actual remark ,"you're here to represent the community and you're here to say if we approve of this conduct," did not ask the jury to "send a message" as Talley claimed. *Talley,* at ¶77.

---

procedural default:
> (1) whether there is a procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to follow this rule; (2) whether the state courts actually enforced the state procedural rule; (3) whether the state procedural rule is an adequate and independent state ground to foreclose federal relief; and if so (4) whether the petitioner has established cause for his failure to follow the rule and prejudice by the alleged constitutional error. (citations omitted).

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

1:06 CV 1393                                                17

The state court decision cited *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991) and that there was nothing that explicitly misinformed the jury as to its role. *Talley,* at ¶77.

Talley maintains that this remark distracted the jury from adjudicating the case on the evidence. However, analysis of a similar remark found no misconduct. In a similar incident the prosecution's remarks were "it is time you sent a message to the community" and "the people in the community have the right to expect that you will do your duty." *Hicks v. Collins,* 384 F.3d 204, 219 (6th Cir. 2004). The Sixth Circuit found:

> These statements were arguably proper general references to the societal need to punish guilty people, rather than an improper "attempt to compare or to associate the defendant with a feared and highly publicized group...." [*Bowling*] at 516-517 .... Conversely, in the instant appeal and as just indicated, the prosecutor's statements only referred to "the general community need to convict guilty people."[*Solivan*]. at 1155. More importantly, such statements "were devoid of the sort of inflammatory content inherent in the prosecutor's statements in [ *Solivan* ] precisely because there was no comparable specific wider context of national attention and concern" here regarding the conviction of double-murderers like Hicks. See *id.* at 1154-55. *Solivan* is inapposite-it is untenable to suggest that the prosecutor's statements were directed to the jurors' desire to end a social problem. Cf. *id.* at 1153. These remarks were not misleading, inflammatory, or prejudicial. Assuming *arguendo*, however, that there was error, it was only harmless since the evidence of Hicks's guilt was overwhelming. See *id.* at 1156 (prosecutorial error may be held harmless "in light of the relative strength of the evidence"). The prosecutor's remarks were isolated and not so improper as to render the trial fundamentally unfair.

*Hicks v. Collins,* 384 F.3d at 219.

While Talley presumes that this was a close case, he is wrong. There were two eyewitness who saw the incident, and expert testimony backing up the prosecution's case. Further, as in *Hicks*, the remarks were not inflammatory, not directed to cure a social problem and not prejudicial. More

importantly, in his counseled application, Talley has made no effort to demonstrate that the state decision was contrary to or an unreasonable application of clearly established Federal law as required under §2254(d).

## *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Talley has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court proceeding. See 28 U.S.C. §2254(d)(1) and (2). There has been no demonstrated need for an evidentiary hearing. It is recommended that the petitioner's application for habeas corpus be denied.

s/James S. Gallas  
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)

Dated: May 13, 2008